# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America<br>v.<br>Arthur E. Ward<br>(DOB: xx/xx/1988)<br><br>_Defendant(s)_ | ) ) ) ) ) ) ) ) | Case No.  24  MJ  126 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __5/31/24 & 6/11/24__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) & 924(a)(8) | Felon in possession of a firearm |
| 21 U.S.C. §§ 841(a)(1) | Distribution of controlled substances |
| 18 U.S.C. § 924(c)(1)(A)(i) | Possession of a firearm in furtherance of drug trafficking |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Jacob Cowan, FBI Special Agent
_Printed name and title_

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 06/12/2024

_Judge's signature_

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
_Printed name and title_

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jacob Cowan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND:

1. I am a sworn federal law enforcement officer with the Federal Bureau of Investigation (FBI), with authority to investigate federal offenses pursuant to Titles 18, and 21 of the United States Code. I have been employed as a Special Agent with the FBI since June 2016. Prior to this, I served as an Officer in the United States Army for twelve years. I have obtained a Bachelor of Science Degree in Criminal Justice from the University of Wisconsin-Milwaukee, a Master's in Professional Studies (M.P.S.) from St. John's University, and a Post Graduate Certificate from the Kennedy School of Government at Harvard University. I graduated from the FBI Academy in Quantico, Virginia in 2016 and have over seven years of law enforcement experience. I have been involved in the enforcement and investigation of numerous violations of federal law to include drug trafficking investigations, firearm trafficking investigations, and violent crime related cases. I have personally conducted and participated in numerous investigations that have given me familiarity with the various methods that criminals use to conduct illicit firearm and narcotics transactions in violation of federal law. I have used investigative techniques including, but not limited to: consensual monitoring, physical surveillance, witness and subject interviews, court authorized electronic surveillance, review and analysis of telephone records, and the execution of search and arrest warrants.

2. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; and seizure of physical evidence.

3. I have relied on informants to investigate narcotics trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute narcotics both within and outside of Wisconsin. I have used informants to conduct "controlled purchases" of controlled substances from individuals. I have also conducted surveillance of individuals engaged in drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs.

4. Based on my training and experience, I have become familiar with the language used over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that drug traffickers may keep photographs of these items on electronic devices.

5. I also know that drug traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where

they exercise dominion and control—narcotics, and records or receipts pertaining to such.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

7. I am submitting this affidavit in support of a Federal Criminal Complaint for Arthur E. WARD (DOB xx/xx/88), in the State and Eastern District of Wisconsin. As will be shown below, there is probable cause to believe that on or about May 31, 2024, WARD committed the crime of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); and on June 11, 2024, WARD committed the crimes of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); Distribution of Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## PROBABLE CAUSE

8. The Federal Bureau of Investigation ("FBI") is investigating allegations that members of the Gangster Disciples street gang, including Arthur WARD, are conspiring with each other, and other individuals yet unknown, to traffic firearms and transport and distribute controlled substances, namely cocaine, in Milwaukee, Wisconsin.

9. During this investigation, a confidential source (CS-2), operating at the direction and control of case agents, purchased three firearms from WARD and approximately two ounces of cocaine. The purchases occurred in May and June 2024, at WARD's Milwaukee area residence.

10. CS-2 began providing information to law enforcement in September 2023. CS-2 is cooperating in exchange for consideration on pending federal drug and firearm-related offenses. The information provided by CS-2 to law enforcement agents is substantially against CS-2's penal interest. Additionally, to the extent possible, information provided by CS-2 has been corroborated by agents through external sources, including physical evidence, consensually recorded telephone calls, phone toll information, audio recordings, surveillance, controlled buys, and law enforcement databases. CS-2 has a criminal history that includes possession of a controlled substance, manufacturing and delivery of a controlled substance, armed robbery, escape, battery, domestic violence, and various motor vehicle violations and misdemeanor convictions. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-2 is credible and CS-2's information is reliable.

*May 28, 2024, Controlled Firearm Purchase with CS-2 from WARD*

11. On May 28, 2024, CS-2 notified law enforcement he/she was in contact with WARD about the purchase of firearms. CS-2 advised law enforcement that WARD would not text with CS-2 because WARD was being very careful due to WARD knowing he had an active warrant for his arrest. Therefore, conversations setting up the purchase of

4

firearms from WARD by CS-2 were unrecorded calls. Law enforcement instructed CS-2 to continue to communicate with WARD in the attempt to locate him and to purchase firearms.

12. On May 28, 2024, at approximately 5:02 p.m., CS-2 contacted law enforcement and stated WARD wanted to sell CS-2 two Taurus G2 9mm firearms, one of which had an extended magazine. Law enforcement advised CS-2 to confirm with WARD that CS-2 would purchase both of the firearms.

13. On May 31, 2024, at approximately 2:30 p.m., law enforcement met with CS-2 at a pre-determined staging area. CS-2 was searched for contraband and United States Currency (U.S.C.) with negative results. Law enforcement searched CS-2's vehicle for contraband and U.S.C. with negative results.

14. CS-2 advised law enforcement that he/she would call WARD on the way to north Milwaukee, where CS-2 believed WARD to be staying, to receive the exact address of where CS-2 would be meeting WARD to purchase firearms.

15. At approximately 2:34 p.m., at a staging area, CS-2 was given $1,400 U.S.C.[1] in pre-recorded buy funds. CS-2 was equipped with audio and visual recording equipment and the devices were activated.

---

[1] On June 10, 2024, a federal search warrant was authorized for WARD's residence. In the affidavit in support of that warrant, the buy money provided to CS-2 was mistakenly represented as $14,000 U.S.C. Rather, CS-2 was provided $1,400 U.S.C.

5

16. Thereafter, CS-2 departed the staging area for north Milwaukee. CS-2 was followed by a law enforcement surveillance team. CS-2 drove to north Milwaukee.

17. At approximately 2:48 p.m., CS-2 placed a consensually recorded telephone call to WARD. CS-2 said, "What's the word my boy?" WARD said, "What's the word my boy?" CS-2 said, "Shit, where you at with it?" WARD said, "Shit, I'm going to be back at the house in like fifteen minutes." CS-2 said, "Like fifteen...you still at the same spot-on Appleton?" WARD said, "On Appleton?" CS-2 said, "Nigga the last time I moved your spot it was by a graveyard, right?" WARD said, "Uh yeah, yeah, yeah, yup, I ain't over there no more bro." CS-2 said, "Oh." WARD said, "I'm on Clarke and shit." CS-2 said, "You want me to come where?" There was a malfunction with the recording equipment, and during the malfunction, WARD told CS-2 to go to the 2601 North Holton Street, Milwaukee, Wisconsin, which was WARD's residence.

18. At 3:24 p.m., CS-2 arrived at 2601 North Holton Street, Milwaukee, Wisconsin, and parked in front of the residence.

19. At approximately 3:28 p.m., CS-2 placed a consensually recorded call to WARD and said, "I'm all the way down..." WARD said, "Come to the side here." CS-2 said, "Alright bet." CS-2 drove down the street. WARD was still on the telephone with CS-2. CS-2 said, "You still there my boy?" WARD said, "Huh?" CS-2 said, "Mother fucking traffic busy as hell right here." WARD said, "Hell yeah (Unintelligible) [WARD spoke to an unidentified individual in the background], my nigga said he was lying, I didn't know you was out there in the front bro." CS-2 said, "Hell yeah, I'm like damn, I had called you

6

though but your girl answered. I was like why does he have me going a fucking busy street." CS-2 said, "I see you." CS-2 parked CS-2's vehicle and exited.

20. At approximately 3:29 p.m., CS-2 met WARD at WARD's North Holton Street residence. CS-2 said, "What's the word my boy, fuck with you?" WARD said, "(Unintelligible)." WARD was wearing red shorts and a red T-shirt. WARD was standing at the passenger seat of a white in color vehicle parked on Holton Street and retrieved a pistol with an extended magazine. WARD put the pistol under his shirt in his shorts and walked to the side door of WARD's North Holton Street residence. *See* Figure 1.



*Figure 1*
(May 31, 2024, Depicting Arthur WARD entering 2601 North Holton Street, Milwaukee, Wisconsin with firearm with extended magazine and an unidentified woman)

7

21. Case agents conducting surveillance at WARD's North Holton Street residence confirmed that the individual CS-2 met with was Arthur WARD by comparing the individual they observed with a booking photograph of Arthur E. WARD (DOB xx/xx/1988).

22. Thereafter, the CS-2 followed WARD, and they entered WARD's North Holton Street residence. Once inside WARD's residence, WARD and CS-2 were in the kitchen. There were multiple unidentified females and children present. WARD handed CS-2 the firearm. CS-2 removed the magazine from the firearm and WARD took the firearm back. WARD pulled the slide of the firearm to the rear to show CS-2 there was no ammunition in the chamber. WARD then gave the firearm back to CS-2. CS-2 and WARD talked about choppers [Assault weapons] and the cost of choppers. Then, WARD said to CS-2, "(Unintelligible), I want you to come outside so you can see it bro." WARD and CS-2 continued to talk about choppers. WARD said, "Mother fuckers ain't be having no choppers." WARD said, "(Unintelligible) mother fucker be 1250 for an AR." CS-2 said, "What the hell they in the store for, 800?" CS-2 and WARD continued to talk about the prices of AR's. WARD handed what appeared to be cocaine in a clear plastic bag to CS-2 to look at. CS-2 handed the suspected cocaine back to WARD and WARD placed the suspected cocaine in his pocket.

23. During the time CS-2 was inside WARD's residence, WARD was looking for his cellular telephone. Additionally, an unidentified female entered WARD's North Holton Street residence, and WARD conducted a narcotics transaction with of what

8

appeared to be pills with this unidentified female. Also, during the time that CS-2 was inside WARD's residence, WARD placed a telephone call to an unknown individual and said, "When you pull up, I'm going to come outside." Later on, WARD received a telephone call from an unidentified individual and said, "Your boy outside right now, okay, I'm coming outside right now." WARD and CS-2 walked outside.

24. Based on their training, experience, and familiarity with this investigation, case agents believe WARD had one firearm on his person that he sold to CS-2 and was awaiting the arrival of a second firearm to sell to CS-2. Case agents further believe WARD was talking to CS-2 about the potential sale of assault weapons in the future. Case agents believe WARD showed CS-2 cocaine to entice CS-2 into purchasing cocaine from him.

25. When WARD and CS-2 went outside, they met an unidentified white female who was standing outside, who said, "I don't know if this is him in the silver car, (Unintelligible) meet in the alley." The unidentified female then said, "There he is." WARD walked over to a dark in color SUV, and the unidentified white female and WARD stayed by WARD's North Holton Street residence. WARD stayed over by the dark in color SUV for a few minutes. WARD walked back from the dark in color SUV, and WARD and CS-2 subsequently walked back inside WARD's residence. WARD handed another firearm to CS-2. In the consensual audio video recording, CS-2 was overheard pulling the slide of a firearm to rear multiple times. CS-2 and WARD agreed to talk at a later date, and CS-2 exited WARD's residence and entered CS-2's covert vehicle.

26. Based on their training, experience, and familiarity with this investigation, case agents believe the unidentified white female called WARD and informed WARD that an unidentified individual arrived at WARD's North Holton Street residence with the second firearm WARD was to sell CS-2. Case agents further believe WARD and CS-2 walked outside WARD's residence where WARD met with an unidentified individual and received a firearm. Case agents believe WARD and CS-2 then walked back into WARD's North Holton Street residence where WARD sold the second firearm to CS-2.

27. At approximately 3:53 p.m., law enforcement followed CS-2 back to the staging area.

28. At approximately 4:10 p.m., CS-2 arrived at the staging area, turned over two firearms to law enforcement: a Taurus Armas G2C 9mm pistol, bearing serial number ABC342083, and a Taurus Armas G2C 9mm pistol with and extended magazine, bearing serial number ACG990064. Both firearms were manufactured outside of the state of Wisconsin. The audio and visual recording equipment was deactivated. Law enforcement searched CS-2 for U.S.C. and contraband with negative results. Law enforcement searched CS-2's vehicle for U.S.C. and contraband with negative results.

*June 1, 2024, Controlled Firearm Purchase with CS-2 from WARD, and Execution of Search Warrant at 2601 North Holton Street, Milwaukee, Wisconsin*

29. On June 1, 2024, law enforcement officers asked CS-2 to inquire with WARD about the purchase of firearm switches. CS-2 spoke to WARD in an unrecorded telephone call about the purchase of switches and WARD sent a photograph via text message of an AK-47 that WARD was selling. *See* Figure 2.

10



*Figure 2*

30.      On June 4, 2024, CS-2 contacted law enforcement and stated CS-2 had an unrecorded conversation with WARD about the future purchase of additional firearms. CS-2 stated WARD had an AK-47, a Dreco, and a revolver to sell. Law enforcement inquired about WARD being able to sell a switch for a firearm, and WARD was not able to produce one. WARD and CS-2 had an additional unrecorded conversation about WARD selling CS-2 cocaine. CS-2 told law enforcement WARD had multiple ounces of cocaine for sale. CS-2 said WARD was asking $1,350 for the AK-47 and $950 per ounce of cocaine. Law enforcement instructed CS-2 to set up the purchase of the AK-47 and cocaine.

31.      On June 10, 2024, the Honorable William E. Duffin, United States Magistrate Judge, authorized a search warrant for WARD's residence located at 2601 North Holton Street, Milwaukee, Wisconsin. *See* 24 MJ 118.

32.      On June 10, 2024, CS-2 notified law enforcement he/she was in contact with WARD about the purchase of an AK-47 and two ounces of cocaine, which was set for

11

June 11, 2024. Although the calls were unrecorded, CS-2 sent law enforcement screen shots of the call logs of when CS-2 spoke to WARD.

33. On June 11, 2024, at approximately 1:45 p.m., law enforcement met with CS-2 at a pre-determined staging area. CS-2 was searched for contraband and U.S.C. with negative results. Law enforcement searched CS-2's vehicle for contraband and U.S.C. with negative results.

34. At approximately 1:47 p.m., at a staging area, CS-2 was given $3,250 U.S.C. in pre-recorded buy funds. CS-2 was equipped with audio and visual recording equipment and the devices were activated.

35. Thereafter, CS-2 departed the staging area for WARD's residence, 2601 North Holton Street, Milwaukee, Wisconsin. CS-2 was followed by a law enforcement surveillance team. CS-2 drove to north Milwaukee.

36. Once CS-2 arrived at 2601 North Holton Street, Milwaukee, Wisconsin, CS-2 parked CS-2's vehicle. CS-2 met with WARD at the residence. CS-2 entered the residence with WARD and provided WARD $3,250 in buy money for an AK-47 and approximately two ounces of suspected crack cocaine. WARD was on the telephone with an unidentified individual. WARD ended the telephone call with the unidentified individual and told CS-2 he needed to drive to 5th and Ring, Milwaukee, Wisconsin. CS-2 told WARD that CS-2 would follow WARD to 5th and Ring, Milwaukee, Wisconsin. WARD and CS-2 exited 2601 North Holton Street, Milwaukee, Wisconsin. CS-2 entered CS-2's vehicle and WARD entered a grey in color sedan. CS-2 followed WARD to 5th and

12

Ring, Milwaukee, Wisconsin. Law enforcement was conducting physical surveillance and followed CS-2 and WARD to 5th and Ring, Milwaukee, Wisconsin.

37. CS-2 parked CS's vehicle at the intersection of 5th and Ring, Milwaukee, Wisconsin, and WARD parked around the corner. Law enforcement conducting physical surveillance observed WARD meet with an unidentified individual in a blue in color Mazda truck. WARD departed the area and was followed by law enforcement back to WARD's North Holton Street residence. CS-2 called WARD and asked WARD where WARD was located. WARD advised CS-2 he went back to WARD's North Holton Street residence. CS-2 departed the intersection of 5th and Ring, Milwaukee, Wisconsin and drove back to WARD's North Holton Street residence. Law enforcement followed CS-2 back to WARD's residence.

38. Once CS-2 arrived at WARD's North Holton Street residence, CS-2 exited CS-2's vehicle and met WARD on the sidewalk in front of the residence. CS-2 followed WARD into the residence. Once inside the residence, a firearm was captured on CS-2's audio visual recording device on the floor in the kitchen of the residence. WARD handed CS-2 approximately two ounces of suspected crack cocaine. CS-2 and WARD exited the residence and CS-2 entered CS-2's vehicle and departed the area.

39. After CS-2 departed, a federal search warrant was executed at 2601 North Holton Street, Milwaukee, Wisconsin. WARD was located inside the residence and placed into custody. Located on his person was approximately $1,370, some of which was pre-recorded law enforcement funds provided to the CS-2 to purchase the cocaine

13

and firearm. A firearm was found in the basement of the residence. This firearm resembled the firearm that WARD had on his person during the controlled firearm and narcotics purchase with CS-2, as depicted below in Figures 3 and 4.



*Figure 3. WARD with firearm in waistband during narcotics and firearms transactions with CS-2.*

*Figure 4. Firearm recovered from basement of WARD's residence.*

40. At approximately 3:00 p.m., law enforcement followed CS-2 back to the staging area.

41. At approximately 3:27 p.m., CS-2 arrived at the staging area, turned over the purchased firearm, a Century Arms C39V2 7.62 mm firearm, bearing serial number C39V2A38689, which was manufactured outside of the state of Wisconsin; and approximately two ounces of suspected crack cocaine to law enforcement, which was field tested using a TruNarc Handheld Narcotics Analyzer, and tested positive for cocaine base. The recovered Century Arms firearm resembled the firearm in the photograph that WARD sent CS-2 before the purchase occurred. The audio and visual recording equipment was deactivated. Law enforcement searched CS-2 for U.S.C. and contraband with negative results. Law enforcement searched CS-2's vehicle for U.S.C. and contraband with negative results.

42. WARD was transported by the U.S. Marshals to FBI Chicago for an interview. WARD was provided his advice of rights by law enforcement and signed the advice of rights form. WARD stated he was the middleman between CS-2 and an individual he identified as "Payne." According to WARD, Payne had a lot of firearms. WARD continued to tell law enforcement officers that he was the middleman and could get things for people.

43. WARD has a criminal history that includes a felony conviction for possession with intent to distribute cocaine (2007). WARD has an active warrant for his

15

arrest for possession of a firearm-convicted of a felony, and for possession with intent to distribute cocaine.

## CONCLUSION

44. Based on the foregoing, I believe there is probable cause to believe that Arthur E. WARD has committed the crimes of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); Distribution of Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).